Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/09/2018 08:14 AM CST

Sonia Becher, appellee and cross-appellant,
v. Mark A. Becher, appellant
and cross-appellee.

___ N.W.2d ___

Filed March 9, 2018.    Nos. S-16-054, S-16-793.

1. **Statutes: Appeal and Error.** Statutory language is to be  given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

2. **Statutes.** It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.

3. **Appeal and Error.** Generally, a party cannot complain of error which the party has invited the court to commit.

4. **Verdicts: Evidence: Appeal and Error.** The recommended factual findings of a special master have the effect of a special verdict, and the report upon questions of fact, like the verdict of a jury, will not be set aside unless clearly against the weight of the evidence.

5. **Trial: Judgments.** Neb. Rev. Stat. § 25-1131 (Reissue 2016) does not require a district court reviewing a referee's decision to make specific findings.

6. **Statutes.** To the extent there is a conflict between two statutes on the same subject, the specific statute controls over the general.

7. **Child Custody: Visitation: Courts.** A trial court has an independent responsibility to determine questions of custody and visitation of minor children according to their best interests, which responsibility cannot be controlled by an agreement or stipulation of the parties.

8. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations

regarding custody, child support, division of property, alimony, and attorney fees.

9. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

10. **Property Division.** With some exceptions, the marital estate does not include property acquired by one of the parties through gift or inheritance.

11. **Modification of Decree: Divorce: Child Custody.** If trial evidence establishes a joint physical custody arrangement, courts will so construe it, regardless of how prior decrees or court orders have characterized the arrangement.

12. **Waiver: Appeal and Error.** Whether a party waived his or her right to appellate review is a question of law.

13. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.

14. **Estoppel.** The doctrine of equitable estoppel is applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he or she has acquiesced or of which he or she has accepted any benefit.

15. **Divorce: Judgments: Waiver: Appeal and Error.** A spouse who accepts the benefits of a divorce judgment does not waive the right to appellate review under circumstances where the spouse's right to the benefits accepted is conceded by the other spouse, the spouse was entitled as a matter of right to the benefits accepted such that the outcome of the appeal could have no effect on the right to those benefits, or the benefits accepted are pursuant to a severable award which will not be subject to appellate review.

16. **Contempt: Appeal and Error.** In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion.

17. **Courts: Restitution: Contempt.** Through its inherent powers of contempt, a court may order restitution for damages incurred as a result of failure to comply with a past order.

18. **Contempt.** Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party.

Petition for further review from the Court of Appeals, Moore, Chief Judge, and Riedmann and Bishop, Judges, on appeal thereto from the District Court for Lancaster County, Steven D. Burns, Judge. Judgment of Court of Appeals in No. S-16-054 affirmed in part, and in part reversed and remanded with directions.

Appeal from the District Court for Lancaster County: Steven D. Burns, Judge, and Karen Flowers, Judge, Retired. Judgment in No. S-16-793 affirmed.

David P. Kyker for appellant in Nos. S-16-054 and S-16-793.

Brad Sipp for appellant in No. S-16-054.

Sally A. Rasmussen, of Mattson Ricketts Law Firm, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Kelch, and Funke, JJ.

Cassel, J.

## I. INTRODUCTION

These two appeals, which have been consolidated in this court, stem from marital dissolution proceedings. One challenged the district court's decree, and is before us on further review of a Nebraska Court of Appeals' decision.[1] Primarily, we disagree with the Court of Appeals' determination that a district court must state specific findings in order to set aside or modify a referee's report authorized by chapter 25 of the Nebraska Revised Statutes (Chapter 25)[2] as clearly against the weight of the evidence. In this appeal, we affirm in part,

---

[1] *Becher v. Becher*, 24 Neb. App. 726, 897 N.W.2d 866 (2017).

[2] See Neb. Rev. Stat. §§ 25-1129 to 25-1137 (Reissue 2016) (authorizing trial by referee).

and in part reverse and remand with directions. The assigned errors in the second appeal, flowing from contempt proceedings, lack merit. In that appeal, we affirm.

## II. BACKGROUND

### 1. APPEAL NO. S-16-054

Mark A. Becher and Sonia Becher were married for 21 years before Sonia filed a complaint for dissolution of marriage in 2013. Because they could not agree to the valuation and division of their vast marital estate or to the award of child custody, child support, alimony, and attorney fees and costs, they agreed to have these issues tried before a court-appointed referee. The consent cited § 25-1129 et seq.

### (a) District Court Proceedings

After a 14-day trial, the referee submitted a report describing its findings of fact on uncontested issues and its "analysis and recommendations" which are set forth in more detail below. Both parties initially filed exceptions to the report, but Mark later withdrew his. Therefore, only Sonia's exceptions and the voluminous record produced at trial were submitted to the district court on review of the referee's report.

The district court entered a final decree in December 2015 in which it adopted some of the referee's factual findings and recommendations and set forth its own findings and conclusions on other issues. Specific findings and conclusions are discussed in our analysis.

### (b) Appeal to Court of Appeals

Mark timely appealed and challenged the district court's review and consideration of the referee's report. He assigned error to certain findings of the court regarding the classification, valuation, and division of the parties' assets and debts; custody and parenting time; child support; alimony; and attorney fees. Sonia cross-appealed and assigned error to the court's allocation of holiday parenting time and its failure to classify certain property as nonmarital.

The Court of Appeals found several of Mark's assigned errors had been waived pursuant to the acceptance of benefits doctrine and for failure to take exception to the referee's report. After concluding that the majority of the issues were preserved for appeal, it addressed the remaining assigned errors concerning the district court's revisions of the referee's report.

The Court of Appeals reviewed Nebraska precedents which generally provided that a referee's findings are treated like a special verdict and can be set aside only where it is "'clearly against the weight of the evidence.'"[3] However, the court also relied on a case from the District Court of Appeal of Florida[4] to find that a trial court must *explicitly determine* that a referee's findings are clearly against the weight of the evidence before setting aside or modifying a referee's report. With this new standard, the Court of Appeals concluded that the district court failed to apply the correct standard of review. The Court of Appeals then vacated those portions of the decree where the district court made findings and conclusions that were inconsistent with the referee's report and modified it to incorporate the findings and conclusions of the referee.[5]

We granted Mark's and Sonia's petitions for further review to address the correct standard of review owed to the findings and recommendations of court-appointed referees.

## 2. APPEAL No. S-16-793

While the first appeal was pending before the Court of Appeals, Mark and Sonia each filed cross-motions for orders

---

[3] *Brown v. O'Brien*, 4 Neb. 195, 198 (1876). See, also, *Mid America Agri Products v. Rowlands*, 286 Neb. 305, 835 N.W.2d 720 (2013) (reviewing recommended findings of special master appointed by Nebraska Supreme Court); *Larkin v. Ethicon, Inc.*, 251 Neb. 169, 556 N.W.2d 44 (1996) (reviewing recommended findings of special master appointed by Nebraska Supreme Court); *Hodges v. Graham*, 71 Neb. 125, 98 N.W. 418 (1904); *Gibson v. Gibson*, 24 Neb. 394, 39 N.W. 450 (1888).

[4] *Kalmutz v. Kalmutz*, 299 So. 2d 30 (Fla. App. 1974).

[5] *Becher v. Becher, supra* note 1.

to show cause, alleging numerous violations of the district court's decree. Because the parties contest only a few of the findings of contempt, only those allegations and findings relevant to this appeal are set forth.

Sonia alleged that Mark entered her residence uninvited, caused damage to the residence, and removed personal property that was not awarded to him under the decree. She further alleged that he repeatedly entered one of her commercial buildings without authorization, caused damage to the property, and removed property from the building that was not awarded to him under the decree.

Mark alleged that Sonia failed to deliver certain personal property awarded to him under the decree. At the hearing, Sonia admitted to having sold certain items awarded to Mark, but maintained that several of the listed items were actually awarded to her. She alleged that she did not have any of the other items of property.

The district court entered orders of contempt against both Mark and Sonia. The court did not make any findings as to whether Mark entered Sonia's home or commercial building unauthorized, caused damage to the properties, or otherwise removed property from those locations. Rather, it disposed of these allegations with a blanket denial of all other relief requested. In its order of contempt against Sonia, the court found that she willfully and contumaciously failed to comply with the decree requiring she turn over all the property listed. Instead of ordering that she turn over the property, the court entered a judgment against Sonia and required that she pay $2,500 as "compensation for the property she did not turn over."

Mark timely appealed, and Sonia cross-appealed. We moved the appeal to our docket[6] and consolidated the appeal with the appeal in case No. S-16-054 for oral argument and disposition.

---

[6] See Neb. Rev. Stat. § 24-1106(3) (Supp. 2017).

## III. ASSIGNMENTS OF ERROR

In appeal No. S-16-054, the dissolution proceeding, Mark assigns that the Court of Appeals erred in (1) finding that he waived his right to appeal the award of three commercial properties to Sonia, because he quitclaimed the deeds to Sonia in compliance with the district court's decree; (2) adopting the referee's determination of custody and parenting time instead of remanding the issues to consider new developments in the 18 months the appeal has been pending; and (3) not remanding for further hearing to conduct a complete accounting.

Sonia assigns that the Court of Appeals erred in (1) applying its standard of review and (2) concluding that the acceptance of benefits doctrine did not bar Mark's appeal as it relates to the division of property.

In appeal No. S-16-793, the civil contempt proceeding, Mark assigns that the district court (1) erred in modifying its decree of dissolution while the appeal of the decree was pending, (2) abused its discretion in ordering Sonia to pay restitution for selling or retaining personal property awarded to Mark in an amount less than the value of the property, and (3) abused its discretion and violated Mark's right to due process in refusing to permit Mark to offer evidence or otherwise rebut Sonia's evidence in support of her motion for contempt.

Sonia cross-appeals and assigns that the district court erred in failing to find Mark in contempt for (1) his unauthorized entry into Sonia's home and the damage he caused while at the home and (2) his unauthorized entry into Sonia's commercial building and the removal of property not awarded to him in the decree.

## IV. ANALYSIS

### 1. Standard of Review of Chapter 25 Referee's Report

Sonia argues that the Court of Appeals incorrectly applied its standard of review, because it "took issue with the fact that the trial judge had not specifically stated the referee's report

(in certain, limited respects) was 'against the weight of the evidence.'"[7] We agree. In addressing this assignment of error, it is first necessary to clarify the standard of review owed to a court-appointed referee's findings. Because the referee in this case additionally made findings and recommendations as to child custody, child support, and alimony, it is also necessary to discuss the effect of the child support referee statutes[8] and the Parenting Act.[9] This requires statutory interpretation. Therefore, we begin by recalling basic guiding principles of statutory interpretation.

[1,2] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[10] It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.[11]

### (a) District Court's Standard of Review

#### (i) Chapter 25 Referee Statutes

[3] Our civil procedure statutes have provided for trial by referee since Nebraska became a state.[12] But we have been unable to find a reported decision where this procedure has been used in a divorce case since 1888.[13] Prior to the adoption of Nebraska's no-fault divorce statute in 1972,[14] our divorce statute stated that suits for divorce "shall be conducted in the same manner as other suits in courts of equity."[15] But our

---

[7] Brief for appellee in support of petition for further review at 3.

[8] Neb. Rev. Stat. §§ 43-1608 to 43-1613 (Reissue 2016 & Supp. 2017).

[9] Neb. Rev. Stat. §§ 43-2920 to 43-2943 (Reissue 2016 & Supp. 2017).

[10] *Jill B. v. State*, 297 Neb. 57, 899 N.W.2d 241 (2017).

[11] *In re Guardianship of Kaiser*, 295 Neb. 532, 891 N.W.2d 84 (2017).

[12] See Rev. Stat. §§ 299 to 306 (1867).

[13] See *Gibson v. Gibson, supra* note 3.

[14] See 1972 Neb. Laws, L.B. 820.

[15] Neb. Rev. Stat. § 42-307 (Reissue 1968).

current divorce statutes contain no such language. It is an open question whether the Legislature intended the Chapter 25 referee provisions to apply to a dissolution action. But even if doing so was error, it was one invited by the parties. Generally, a party cannot complain of error which the party has invited the court to commit.[16] Thus, we assume that a Chapter 25 referee may be appointed in a dissolution action, and turn to the specific issue presented here.

Section 25-1131 provides the relevant standard of review for a general court-appointed referee's findings:

> The trial before referees is conducted in the same manner as a trial by the court. . . . They must state the facts found and the conclusions of law, separately, and their decision must be given, and may be excepted to and reviewed in like manner. . . . *When the reference is to report the facts, the report has the effect of a special verdict*.

(Emphasis supplied.) By its plain language, a Chapter 25 referee's *factual findings* are entitled to some deference. This is in line with our historical standard of review for the recommended findings of special masters appointed by this court pursuant to § 25-1129.[17] But without similar language limiting the district court's review of a referee's *conclusions or recommendations*, we decline to read such language into the statute. Therefore, we conclude that the district court owed no deference to the referee's conclusions or recommendations.

[4] Our case law establishes that the recommended factual findings of a special master have the effect of a special verdict, and the report upon questions of fact, like the verdict of a jury, will not be set aside unless clearly against the weight of the evidence.[18] The recommended factual findings of the referee were entitled to the same treatment.

---

[16] *Burcham v. Burcham*, 24 Neb. App. 323, 886 N.W.2d 536 (2016).

[17] See cases cited *supra* note 3 and accompanying text.

[18] See, e.g., *Mid America Agri Products v. Rowlands, supra* note 3.

[5] But the Court of Appeals went further. It reasoned that because the district court did not make an explicit determination on the record that the findings were against the clear weight of the evidence, it did not give deference to recommended factual findings.[19] However, § 25-1131 does not require a district court reviewing a referee's decision to make specific findings. Our divorce statutes do not require specific findings in the division of property,[20] except a finding whether a property settlement agreement is or is not unconscionable.[21] That is not to say that specific findings are not helpful. In some instances, we have stated that they would have been.[22] But even where our civil procedure code mandates specific findings, it does so only upon a party's request.[23] Our case law teaches that unless a statute requires specific findings or we mandated them as a matter of case law, explicit findings are not required.[24] Because nothing in the plain language of § 25-1131 requires such explicit findings, a district court may implicitly find that a referee's findings are against the clear weight of the evidence.

### (ii) Child Support Referee Statutes

Having determined the correct standard of review for a referee's factual findings, we must now harmonize the apparently conflicting standard espoused in the child support referee statutes.

---

[19] *Becher v. Becher, supra* note 1.

[20] See Neb. Rev. Stat. §§ 42-365 and 42-366 (Reissue 2016).

[21] See § 42-366(2) to (4).

[22] See, e.g., *Liming v. Liming*, 272 Neb. 534, 723 N.W.2d 89 (2006).

[23] See Neb. Rev. Stat. § 25-1127 (Reissue 2016).

[24] See, e.g., *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017) (specific factual findings not required to justify sentence even where factors are enumerated by statute); *State ex rel. Amanda M. v. Justin T.*, 279 Neb. 273, 777 N.W.2d 565 (2010) (specific finding not required in creating parenting plan under Parenting Act); *Jacox v. Pegler*, 266 Neb. 410, 665 N.W.2d 607 (2003) (encouraging but not requiring specific findings on record at each step of *Batson* challenge).

[6] The child support referee statutes allow a trial court to refer a case involving the establishment, modification, enforcement, and collection of child, spousal, or medical support and protection orders to a court-appointed child support referee.[25] Like Chapter 25 referees, child support referees must submit a written report containing findings of fact and recommendations to the trial court, which may be excepted to by the parties.[26] But, the trial court owes no deference to these findings and recommendations and "may accept or reject all or any part of the report and enter judgment *based on the court's own determination*."[27] This necessarily conflicts with the Chapter 25 referee statutes. To the extent there is a conflict between two statutes on the same subject, the specific statute controls over the general.[28] Accordingly, the standard of review for the findings and recommendations of child support referees directs the district court's review of findings and recommendations on the issues of child support, including payment of reasonable education expenses,[29] and spousal support or alimony.

### (iii) Parenting Act

[7] The referee's report also included recommended findings of fact related to child custody and a proposed parenting plan. These recommended findings are subject to the standard of review in § 25-1131, but the proposed parenting plan is subject to the Parenting Act. The Parenting Act provides that a court rule may provide for the parenting plan to be developed by the parties or their counsel, a court conciliation program, an approved mediation center, or a private mediator.[30] Though

---

[25] See § 43-1609(1).

[26] § 43-1612(3).

[27] § 43-1613 (emphasis supplied).

[28] *SFI Ltd. Partnership 8 v. Carroll*, 288 Neb. 698, 851 N.W.2d 82 (2014).

[29] Neb. Rev. Stat. § 42-369(3) (Reissue 2016).

[30] § 43-2929(1).

it does not specifically provide that a court-appointed referee may propose a parenting plan, no one has challenged the referee's authority to propose a parenting plan. But, regardless of the referee's authority, a trial court has an independent responsibility to determine questions of custody and visitation of minor children according to their best interests, which responsibility cannot be controlled by an agreement or stipulation of the parties.[31]

A court is required to review a parenting plan and determine if it meets the requirements of the Parenting Act and if is in the best interests of the minor child or children. If the parenting plan lacks any of the elements required by the act or is not in the child's best interests, the court shall modify and approve the parenting plan as modified, reject the parenting plan and order the parties to develop a new parenting plan, or reject the parenting plan and create a parenting plan that meets all the required elements and is in the best interests of the child.[32] However, if the court rejects a parenting plan, it must provide written findings as to why the parenting plan is not in the best interests of the child.[33]

This multiplicity of review standards counsels against using Chapter 25 referees routinely in dissolution actions. And it may explain why 130 years have passed since the last reported decision documenting its use.

### (b) Appellate Court
### Standard of Review

[8] Although the district court's review of the referee's report was necessarily complicated by the effect of these different statutes, the standard of review on appeal remains the same. In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has

---

[31] See *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007).

[32] § 43-2935(1).

[33] See § 43-2923(4).

been an abuse of discretion by the trial judge.[34] This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.[35]

[9] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[36] However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.[37] In this case, the appellate court would give weight to the fact that the court-appointed referee heard and observed the witnesses and accepted one version of the facts rather than another.

### (c) Application of Standard of Review

Because the Court of Appeals did not correctly apply its standard of review, we must review the district court's decree for an abuse of discretion, keeping in mind the multifaceted standard of review that the district court was to apply to the referee's report.

The Court of Appeals correctly concluded that Mark waived any challenge where the district court came to the same conclusion as a referee, because he withdrew his exceptions to the referee's report. Therefore, we limit our review to those instances where the Court of Appeals modified the district court's decree to incorporate the referee's findings and recommendations. Though Mark filed a motion to strike the argument in Sonia's supplemental brief related to this assignment of error, we overrule the motion.

---

[34] *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

[35] *Id.*

[36] *Id.*

[37] *Id.*

### (i) Division of Marital Estate

#### a. Classification of Nonmarital Property

During the parties' marriage, Sonia's father gave her monetary gifts totaling over $1.7 million. Both the referee and the district court determined that the monetary gifts were not traceable to identifiable assets with two exceptions—the gift used to purchase the West O Development/Dollar General building and the gift used to pay off the mortgage on the marital home.

#### i. West O Development/ Dollar General Building

The West O Development/Dollar General building was purchased by Sonia and her sister using an $825,000 gift from their father. Later, Sonia purchased her sister's interest in the building with a $500,000 loan on the building and $25,000 from a savings account. Additional money was put into the property for repairs and improvements. The referee determined the $825,000 gift did not retain its status as a gift, because the equity in the building was encumbered by loans in order to pay the sister back and money generated during the marriage was invested into the building for repairs.

The district court disagreed with the referee's determination and found that "[t]here is no evidence of any marital funds being used for the purchase or continued operation of [the property]." Because the rents and gifts from Sonia's father exceeded the costs associated with the property, the court concluded that Mark had no claim to it. The court also noted an additional monetary gift from Sonia's father for repairs to the building which was not discussed by the referee. Therefore, the court implicitly determined that the referee's finding as to the gift status of the property was against the clear weight of the evidence and set aside the property to Sonia as nonmarital property.

The district court reviewed the evidence and concluded that no evidence supported a finding that the monetary gifts

represented by the West O Development/Dollar General building lost their gift status. Accordingly, it did not abuse its discretion when it substituted its own findings for that of the referee.

### ii. Mortgage Payoff

Sonia's father made another gift to Sonia in the amount of $432,948. Of this amount, $220,300 was used to pay off the mortgage on the marital home. The remainder was placed in a certificate of deposit held in Mark's name only. Mark spent the entirety of the certificate of deposit during a period of separation, and Sonia has not challenged this expenditure.

The referee determined that the monetary gift was a gift to the marriage, or at least that it lost its status as a gift when it was applied to the marital debt. Nonetheless, it concluded that Sonia was entitled to some credit in equity and reduced the fair market value of the marital home awarded to Sonia by one-half of the payoff value ($110,150). The district court noted the same evidence, but determined that Sonia was entitled to a credit for the entire mortgage payoff ($220,300) in recognition of the gift.

[10] With some exceptions, the marital estate does not include property acquired by one of the parties through gift or inheritance.[38] And, there is no exception where an otherwise nonmarital monetary gift is spent on a family expense.[39] Therefore, the referee's finding that the portion of the gift spent on the mortgage payoff lost its gift status because it was applied to a marital expense was contrary to the law and against the weight of the evidence. The district court did not err in its determination that the mortgage payoff money retained its status as a gift. Even assuming that it did lose its status, it was within the district court's power in equity to give

---

[38] *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000).

[39] See, e.g., *Mathew v. Palmer*, 8 Neb. App. 128, 589 N.W.2d 343 (1999).

credit to Sonia for one-half of the gift where Mark dissipated the other half.[40]

### b. Valuation of Business Entities

The district court awarded two businesses to Mark at different values than those recognized by the court-appointed referee. The valuation of a business is a question of fact. As a result, the findings of the referee on the issue had the effect of a special verdict.

### i. Sark Tile, Inc.

The referee awarded Sark Tile, Inc., to Mark at a value of $491,353 after altering the formula used in one of the expert valuations. The district court also awarded the business to Mark, but at a value of $570,000. It is apparent from the record that the district court reweighed the testimony and the evidence and used a different formula than that used by the referee. This was an abuse of discretion.

The district court effectively retried the issue, taking on the role of the fact finder, and did not engage in any analysis of whether the value accepted by the referee was against the clear weight of the evidence. Because we find, in our de novo review, that it was not against the clear weight of the evidence, Sark Tile should have been awarded at the value assigned by the referee.

### ii. Lamp & Lighting of Lincoln, Inc.

The referee awarded Lamp & Lighting of Lincoln, Inc., to Mark at a value of $107,000 after altering the formula used in one of the expert valuations similar to that used in Sark Tile. The district court also awarded the business to Mark

---

[40] See Neb. Rev. Stat. § 42-365 (Reissue 2016). See, also, *Parde v. Parde*, 258 Neb. 101, 108, 602 N.W.2d 657, 662 (1999) ("[i]n determining what assets constitute the marital estate and how the property should be divided, . . . Nebraska, by statute, is an equitable property distribution jurisdiction").

at a net value of $107,000 after applying a $150,000 debt to the business. However, the referee appears to have set the $150,000 debt over to Mark separate from the business valued at $107,000. After a careful review of the record, it is plain that this was done in error.

The expert valuation relied upon by the referee included the $150,000 debt in its calculation. Therefore, the referee gave credit to Mark for the $150,000 debt twice—once in arriving at the net value using the expert's formula and once in setting the $150,000 debt over to Mark in its division of the marital estate. Because the district court arrived at the same net value for Lamp & Lighting of Lincoln as the referee and did not carry over the double credit for the debt, there was no error in the district court's valuation of the business.

### c. Valuation of Personal Property

The district court adopted the referee's allocation of personal property, but valued the property awarded to Sonia at $27,365 and the property award to Mark at $23,870. The referee had awarded the property to Sonia at $13,340 and the property to Mark at $21,495. It appears that the court awarded the personal property within the marital home to Sonia at the value assigned by an appraiser, reduced by the appraised values of the individual items awarded to Mark. However, the court awarded these items to Mark at the higher value Mark proposed and not the appraised value. This was an abuse of discretion.

The valuation of personal property is a question of fact, and the referee's valuations had the effect of a special verdict. The district court does not appear to have found either the appraised values or Mark's values for the personal property to be against the clear weight of the evidence, because it accepted the values assigned by both for different items of property. Because the referee's findings cannot be set aside unless they are against the clear weight of the evidence, the district court abused its discretion in assigning different values to the personal property awarded.

#### d. Separate Valuation of
#### Shipping Containers

The district court separately valued the shipping containers used by Sark Tile and awarded them to Mark as personal property. However, the shipping containers were already accounted for in the referee's valuation of Sark Tile. Because the referee's valuation of Sark Tile was not against the clear weight of the evidence, the district court erred in separately valuing the shipping containers.

#### e. Summary

We reverse the Court of Appeals' decision to the extent that it is inconsistent with this opinion. Specifically, we find that the district court did not err in its award of the West O Development/Dollar General building to Sonia as nonmarital property, in its determination that Sonia was entitled to a credit of $220,300 against the value of the marital home in recognition of the monetary gift from her father, or in its valuation of Lamp & Lighting of Lincoln. We agree with the Court of Appeals that the district court abused its discretion by substituting its valuations of Sark Tile and the personal property awarded for those of the referee and in separately valuing the shipping containers as personal property. Accordingly, we modify the district court's marital property distribution and decrease Sonia's share of the marital estate by $14,025 (the difference between the court's value for the personal property awarded and the referee's value) and decrease Mark's share by $142,174 (the difference between the court's values for Sark Tile, the shipping containers, and the personal property awarded and the referee's values for the same).

### (ii) Child Custody

The referee found that joint legal custody of all three of the parties' minor children was in their best interests. It recommended a split physical custody arrangement, with Mark having primary physical custody of the parties' son and Sonia

having primary physical custody of the parties' two daughters. Based upon the recommendations of a counselor, the proposed parenting plan did not provide a parenting schedule for the two oldest children. Parenting time with Mark for the youngest child was scheduled on alternating weekends, with one overnight on the alternating weeks.

The district court found that a split and joint custody arrangement with modifications to the proposed parenting plan designed to reduce potential conflicts was in the best interests of the children. In its decree, the court ordered that Sonia have permanent legal and physical care, custody, and control of the parties' two daughters, while Mark have permanent legal and physical care, custody, and control of the parties' son with each "subject to the rights of parenting time for the noncustodial parent as set forth in the parenting plan." However, the court-ordered parenting plan provided that the parties would share joint legal custody of all three children, with Mark having primary physical custody of the parties' son, Sonia having primary physical custody of the parties' oldest daughter, and shared joint physical custody of the parties' youngest daughter. Like the proposed parenting plan, the court-ordered parenting plan did not provide a parenting schedule for the two oldest children. It did provide a joint physical custody arrangement for the youngest child with Mark and Sonia having equal parenting time on alternating weeks.

The district court did not abuse its discretion in modifying the proposed parenting plan, because it had an independent responsibility to determine custody and parenting time according to the children's best interests.[41] And, it provided written findings of why the modifications to reduce potential conflicts were in the children's best interests. Therefore, only two issues remain.

[11] First, the parties agreed on appeal that the decree's language concerning physical custody of the youngest child was

---

[41] See *supra* note 31 and accompanying text.

inconsistent with that in the parenting plan. In our review, we find that at times, the court characterizes the custody arrangement as "split and joint" and at other times, it uses language consistent with sole custody arrangements. If trial evidence establishes a joint physical custody arrangement, courts will so construe it, regardless of how prior decrees or court orders have characterized the arrangement.[42]

Our statutes define joint physical custody as "mutual authority and responsibility of the parents regarding the child's place of residence and the exertion of continuous blocks of parenting time by both parents over the child for significant periods of time."[43] Here, the parents' custody was awarded subject to the parenting time in the parenting plan. That plan provided that the youngest child will have "parenting time with her Father and Mother on alternating weeks, commencing on Friday after school until the following Friday after school." Summer parenting time is equally divided, with each parent having parenting time for exactly one half of the summer break. This meets the statutory definition of joint physical custody.

Second, Sonia alleged that the district court erred in allocating parenting time over the Christmas holiday. The court ordered "[e]very year the parent who does not have parenting time on Christmas Day as a result of the weekly rotation . . . shall have parenting time beginning on December 24 at noon until December 24 at 11:30 p.m." In light of the specific findings of the animosity between the parents and the difficulties of past parenting time exchanges, we do not find that the district court abused its discretion in ordering a default holiday schedule that minimizes communication between the parties and preserves the child's typical schedule.

Ultimately, the labels make little difference. The provisions of the decree adequately set forth each party's rights and responsibilities.

---

[42] *Elsome v. Elsome*, 257 Neb. 889, 601 N.W.2d 537 (1999).

[43] See § 43-2922(12).

### (iii) Child Support, Private School
### Tuition, and Alimony

The district court made findings and conclusions concerning child support, payment of the children's private school tuition, and alimony which differed from those in the referee's report. However, because the referee's findings and recommendations on these issues are governed by the child support referee statutes, the district court was free to accept or reject any or all of the referee's findings and recommendations.[44] Our review is limited to whether the district court abused its discretion in the child support, private school tuition, and alimony ordered. Finding none, we affirm the district court's decree as it relates to these issues.

### 2. Acceptance of Benefits

Marks assigns that the Court of Appeals erred in applying the acceptance of the benefits doctrine to find that he waived his right to appeal the award of three commercial properties to Sonia.

### (a) Additional Facts

Sonia was awarded three commercial properties in the district court's decree that the referee had recommended be awarded to Mark: "Mini Storage," the West O Development/ Dollar General building, and 901 Sun Valley. Before filing an appeal, Mark moved to determine a supersedeas bond. The district court entered an order setting the supersedeas bond at $600,000 and providing that Mark would not be required to transfer any ownership interest he may have in the real estate awarded to Sonia during the pendency of any appeal if he filed the bond. However, there is nothing in the record before us or in the court's trial docket entry that shows Mark ever filed a supersedeas bond.

After filing his appeal, Mark executed quitclaim deeds conveying his interest in three commercial properties to Sonia,

---

[44] See § 43-1613.

refinanced loans, utilized the proceeds of rent and receipts from businesses awarded to him, and created a new corporation to hold title to properties awarded to him under the decree. Sonia then sold one of the commercial properties awarded to her in an arm's-length sale to a third party.

The Court of Appeals found that Mark had waived his right to appeal the award of the three commercial properties to Sonia, because his voluntary conveyance of the properties evidenced an intent to be bound by the decree. It applied the exception to the doctrine outlined in *Kassebaum v. Kassebaum*[45] to find that Mark had not waived his right with regard to the other issues on appeal.

### (b) Standard of Review

[12,13] Whether a party waived his or her right to appellate review is a question of law.[46] When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.[47]

### (c) Analysis

Mark argues that executing the quitclaim deeds was not an acceptance of a benefit, but, rather, was an "involuntary acceptance of a detriment."[48] We agree and conclude that the acceptance of the benefits doctrine did not apply in this instance, because Sonia—not Mark—accepted the benefits in that transaction. However, we find that Mark is nonetheless equitably estopped from challenging the award of Mini Storage.

---

[45] *Kassebaum v. Kassebaum*, 178 Neb. 812, 815, 135 N.W.2d 704, 706 (1965) ("'[i]f the outcome of the appeal could have no effect on the appellant's right to the benefit accepted, its acceptance does not preclude the appeal'") (quoting 4 Am. Jur. 2d *Appeal and Error* § 253 (1962)). Accord *Liming v. Liming, supra* note 22.

[46] *Liming v. Liming, supra* note 22.

[47] *Frohberg Elec. Co. v. Grossenburg Implement*, 297 Neb. 356, 900 N.W.2d 32 (2017).

[48] Supplemental brief for appellant on petition for further review at 13.

### (i) Mini Storage

[14] The doctrine of equitable estoppel is applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he or she has acquiesced or of which he or she has accepted any benefit.[49] Mark had the opportunity to supersede the divorce decree and elected not to file a supersedeas bond. He refinanced loans such that the three commercial properties were unencumbered by his debt and executed quitclaim deeds on the properties in favor of Sonia. And, at least with regard to Mini Storage, Sonia relied on Mark's actions and exercised her ownership right to sell the property to a third party. That property cannot now be recovered on appeal. Therefore, Mark waived his right to challenge Sonia's ownership of Mini Storage.

### (ii) West O Development/ Dollar General Building and 901 Sun Valley

Equitable estoppel does not apply to Mark's assignment of error concerning West O Development/Dollar General building and 901 Sun Valley, because Sonia did not detrimentally rely on Mark's actions. But, Mark does not identify how the award of those properties to Sonia constituted an abuse of discretion—his argument is limited to the court's "failing to review the Referee's Report."[50] As explained above, the district court owed deference only to the referee's *factual findings* and could reach its own determinations on what to order in its decree.

Because we find no abuse of discretion in the court's award of the two commercial properties to Sonia, we affirm that part of the district court's decree.

---

[49] *Fitzgerald v. Community Redevelopment Corp.*, 283 Neb. 428, 811 N.W.2d 178 (2012).

[50] Brief for appellant at 30.

### (iii) Other Assignments
### of Error on Appeal

In applying the exception to the acceptance of the benefits doctrine to Mark's other assignments of error, the Court of Appeals reviewed each assignment to determine whether the outcome of the appeal could affect his acceptance of the related benefits. Without concluding whether this was the correct analysis, we find that another exception to the doctrine applied.

[15] A spouse who accepts the benefits of a divorce judgment does not waive the right to appellate review under circumstances where the spouse's right to the benefits accepted is conceded by the other spouse, the spouse was entitled as a matter of right to the benefits accepted such that the outcome of the appeal could have no effect on the right to those benefits, or the benefits accepted are pursuant to a severable award which will not be subject to appellate review.[51] Sonia did not challenge Mark's right to the benefits he accepted either at trial or on appeal. Because Mark accepted only those benefits which Sonia conceded his right to, Mark did not waive his right to appellate review of his assignments of error discussed above.

### 3. Contempt Orders

### (a) Standard of Review

[16] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion.[52]

---

[51] *Liming v. Liming, supra* note 22.

[52] *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016).

### (b) Analysis

#### (i) Mark's Appeal

Mark argues that (1) the district court inappropriately modified its decree of dissolution while the appeal of the decree was pending when it ordered Sonia to pay restitution for her violation of the decree, (2) the restitution was insufficient, and (3) the court abused its discretion when it refused to permit him to offer evidence or rebut Sonia's evidence in her motion for contempt. However, Mark did not appeal from the order finding him in contempt and did not make an offer of proof for the two rebuttal witnesses he was not allowed to call. Therefore, we find that Mark failed to preserve his third argument for appeal and we address only his first two.

[17] Through its inherent powers of contempt, a court may order restitution for damages incurred as a result of failure to comply with a past order.[53] In ordering Sonia to compensate Mark for the personal property she did not turn over to him, the district court did not modify the district court decree. Instead, it ordered restitution for the loss of the personal property to which Mark was entitled. This was an appropriate remedy for a finding of contempt.

Mark further maintains that restitution was inadequate to compensate him for his loss and requests that the issue be remanded for a recalculation of the items Sonia did not turn over. Though the district court did not itemize its accounting, it is apparent that it ordered restitution in the amount that the missing personal property was initially valued when set over to Mark in the decree. The valuation was not challenged then and it cannot be challenged now on appeal. Accordingly, we find no merit to Mark's arguments on appeal.

#### (ii) Sonia's Cross-Appeal

Sonia cross-appealed from the order finding Mark in contempt and argues that the district court abused its discretion

---

[53] *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016).

when it failed to find Mark in contempt for his unauthorized entry into her residence and commercial building and the removal and destruction of property on the premises.

[18] Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party.[54] They are not instituted to provide relief for other wrongdoings by a private party where other relief is available by statute. The district court's jurisdiction over the decree did not preclude Sonia from seeking separate relief in tort for trespass and conversion. Therefore, it did not err in denying the same relief under the guise of a contempt order.

## V. CONCLUSION

For the reasons stated above, we affirm in part, and in part reverse and remand case No. S-16-054 with directions that the district court is to divide the marital estate in accordance with this opinion. We affirm the orders of contempt in case No. S-16-793 in all respects.

JUDGMENT IN NO. S-16-054 AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.
JUDGMENT IN NO. S-16-793 AFFIRMED.

KELCH, J., not participating in the decision.
WRIGHT and STACY, JJ., not participating.

---

[54] *Id.*