IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


WILLIAMS V. WILLIAMS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


MYRNA F. WILLIAMS, APPELLEE,

V.

KENNETH J. WILLIAMS, APPELLANT.


Filed June 5, 2018.    No. A-17-409.


Appeal from the District Court for Hayes County: DAVID W. URBOM, Judge. Affirmed.

James C. Bocott, of Law Office of James C. Bocott, P.C., L.L.O., for appellant.

Timothy P. Brouillette and Audrey A. Bellew, Senior Certified Law Student, of Brouillette, Dugan & Troshynski, P.C., L.L.O., for appellant.


MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Kenneth J. Williams appeals the decree dissolving his marriage to Myrna F. Williams. Kenneth's only claims of error concern the alimony awarded to Myrna. He argues that the district court erred in awarding alimony to Myrna when she neither pled nor prayed for such relief in her complaint. In the alternative, Kenneth contends that if the issue of alimony was properly before the district court, the district court abused its discretion in both the amount and duration of the alimony award. Finding no merit to the arguments raised on appeal, we affirm.

## STATEMENT OF FACTS

Kenneth and Myrna were married in December 1999. There were no children born of the marriage. In June 2016, Myrna filed a complaint for dissolution in which she prayed that the parties' marriage be dissolved; that the parties' property and debts be divided equitably between

the parties; that she be awarded attorney fees and court costs; "and for such other, further and different relief as the Court may deem just and equitable." After Myrna requested $5,000 per month in temporary alimony, the district court granted her $750 per month in temporary alimony.

The trial was held in February 2017. At the time of the trial, the parties had been married nearly 18 years, Myrna was 64 years old, Kenneth was 49 years old, and both parties were in good health. Kenneth joined the Navy in 1987 and, at the time of trial, had been in the Navy for 30 years and reached the rank of Commander. Kenneth testified he has 8 more years before the Navy will force him to retire.

Kenneth's military career required the parties to move frequently during their marriage with the parties residing in California, Washington, and Colorado. In November 2012, the parties bought a 160-acre property in Hayes County, Nebraska, where Kenneth desired to live upon his retirement. In 2014, upon the parties' agreement, Myrna moved to Nebraska to take care of the Hayes County property and Kenneth moved to Virginia where he had been transferred by the Navy.

Despite the fact that neither party went to college, Kenneth earns significantly more than Myrna. At the time of trial, Kenneth was receiving a monthly base pay of $9,062.70 and received an additional $253.63 for a basic allowance for subsistence plus $2,352.00 for a basic allowance for housing (BAH) for a total gross monthly income of $11,668.33. Kenneth testified that his BAH will decrease to about $1,812 after the dissolution because he will no longer have a dependent.

Conversely, Myrna, who immigrated from the Philippines in the mid-1980's and was trained as a hairdresser there, was not licensed as a hairdresser in the United States. During the parties' marriage, Myrna attempted to get a scholarship to attend hairdressing school but was denied because Kenneth's income was too high. After that denial, Myrna did not pursue a hairdressing license and did not raise the issue of financing her education with Kenneth because she did not want him to spend money for her to attend hairdressing school. Myrna testified that Kenneth was restrictive of the money he would spend on her and she sacrificed certain things financially because Kenneth controlled their finances. Myrna worked various low-paying jobs during the marriage including housekeeper, babysitter, caregiver, dishwasher, and a convenience store employee, and there were times she was unemployed. Myrna's 2013 and 2014 W-2 forms confirm her low income--in 2013, Myrna had gross wages of $8,927.89 and, in 2014, she had gross wages of $3,185.42. Myrna's most recent employment paid $10 per hour. In July 2017, she was eligible to receive $271 per month in Social Security benefits and, if she waited an additional year, she was eligible for $301 per month in benefits.

Throughout the parties' marriage, Myrna was allowed to keep the income she earned from her employment to use as she wished and she also received an "allowance" from Kenneth ranging from $1,000 to $1,200. When Myrna lived in Nebraska, she used her "allowance" to pay expenses such as her cell phone, internet, cable, groceries, and gas, and Kenneth paid for her other expenses including the mortgage, car payments, and car insurance. Myrna has relocated to California and is requesting permanent alimony of $4,000 per month. Exhibit 7, Myrna's affidavit in support of her request for alimony, was received into evidence without objection.

Myrna testified that throughout the parties' marriage, she depended on Kenneth for financial support and she was unaware of the parties' finances. For example, prior to the filing of the dissolution, Kenneth purchased, and paid cash for, a 40-acre section of land solely in his name

without Myrna's knowledge. Additionally, 1 month prior to Myrna filing the complaint for dissolution, Kenneth withdrew $49,000 from a Farmer's State Bank account and spent those funds on various expenses including furniture and household goods; attorney fees; truck maintenance and repairs; deposit and improvements of property he is renting in Virginia; trips to Nebraska; his annual fishing trip; and a wedding anniversary trip for his parents.

After hearing all of the evidence, in March 2017, the district court entered an order dissolving the parties' marriage. Among other things, the court awarded Myrna $20,300 compared to Kenneth's award of $362,171.83 in marital assets which award for Kenneth included the income-producing 160-acre and 40-acre Hayes County, Nebraska, properties. The court awarded Myrna $5,500 in marital debt, while correspondingly awarding Kenneth $348,680.90 in marital debt. The court also awarded Myrna a portion of Kenneth's military retirement pay and ordered Kenneth to pay Myrna monthly alimony of $1,500 for 96 months. The court also ordered Kenneth to pay $2,500 of Myrna's attorney fees, noting that if he had not been ordered to pay that sum, his alimony obligation would have been higher in order to provide for Myrna's financial needs. Kenneth has timely appealed to this court.

## ASSIGNMENTS OF ERROR

Kenneth contends that the court erred in awarding alimony to Myrna when she neither pled nor prayed for such relief in her complaint. In the alternative, Kenneth argues that if the issue of alimony was properly before the district court, the court abused its discretion in both the amount and duration of the alimony award.

## STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id.*

In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id.* However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

### AWARD OF PERMANENT ALIMONY

Kenneth contends that the district court erred in awarding alimony to Myrna when she neither pled nor prayed for such relief in her complaint. This position has been rejected by the Nebraska Supreme Court in *Browers v. Browers*, 195 Neb. 743, 240 N.W.2d 585 (1976), wherein the court determined that a trial court may order permanent alimony even though a party has not specifically prayed for such award where the dissolution case is tried with both parties present and their property situation, earning capacity, earnings, health, and marital history were explored.

In this case, although Myrna's complaint does not request permanent alimony, her complaint does make a request "for such other, further and different relief as the Court may deem

just and equitable." A party may be awarded alimony on a prayer for equitable relief even where that party did not make a specific request in either the petition or at trial. *Boroff v. Boroff*, 197 Neb. 641, 250 N.W.2d 613 (1977). See, also, *Henke v. Guerrero*, 13 Neb. App. 337, 692 N.W.2d 762 (2005) (prayer for general equitable relief is to be construed liberally and will often justify granting relief in addition to that contained in specific prayer, provided it fairly conforms to case made by petition and evidence).

Further, the dissolution case was tried with both parties present and, during the trial, the parties' property, earning capacity and earnings, health, and marital history were explored. By the time of trial, Kenneth was on notice of the issue of alimony due to both Myrna's request, and the court's award, of temporary alimony. Further, in opening statements, Kenneth's counsel acknowledged that permanent alimony was an issue when he stated: "[W]e don't think at the end of the day the Court will find that there's any evidence to support an alimony award." Finally, Kenneth did not object to Myrna's testimony requesting permanent alimony of $4,000 per month or the admission of exhibit 7, Myrna's affidavit in support of her request for permanent support and alimony. Thus, based upon our de novo review of the record, the district court did not abuse its discretion in awarding alimony to Myrna despite her failure to specifically plead or pray for such relief in her complaint.

AMOUNT AND DURATION OF ALIMONY

Having determined that the issue of permanent alimony was properly before the district court, we now consider Kenneth's claim that the district court abused its discretion in both the amount and duration of the alimony award.

The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in Neb. Rev. Stat. § 42-365 (Reissue 2016) make it appropriate. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). In weighing a request for alimony, the court may take into account all of the property owned by the parties when entering the decree, whether accumulated by their joint efforts or acquired by inheritance. *Id.*

In considering alimony, a court should weigh four factors listed in § 42-365: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the party seeking support to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. *Becher v. Becher*, 24 Neb. App. 726, 897 N.W.2d 866 (2017), *reversed in part on other grounds* 299 Neb. 206, 908 N.W.2d 12 (2018). In addition to the specific criteria listed in § 42-365, a court should consider the income and earning capacity of each party and the general equities before deciding whether to award alimony. *Becher, supra*. Further, disparity in income or potential income may partially justify an award of alimony. *Hosack v. Hosack*, 267 Neb. 934, 678 N.W.2d 746 (2004).

In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008).

In his arguments, Kenneth somewhat conflates the four factors set forth in § 42-365 as they relate to his arguments for each. For clarity, we will first summarize his arguments before

addressing his ultimate contention. Kenneth argues that upon their marriage, Myrna, then 47½ years old, had supported herself for 30 years and was an undocumented immigrant. He argues that at age 47½, Myrna had largely established her earning potential and the marriage allowed her to obtain citizenship and better her opportunities for employment. He argues that he has largely taken care of Myrna financially during the 18-year marriage, that it is difficult to find any reference in the record concerning Myrna's contributions to the marriage, that they have no children to care for, and that neither party caused the other to interrupt or miss an educational or career opportunity. Kenneth argues that both he and Myrna are in good health, are able to work full-time jobs, both have a high school education with some job-specific training and no college. Finally, Kenneth argues that Myrna was awarded only $5,500 in debt compared to his $350,000 in debt, leaving him with a greater obligation to manage the associated debt service. Kenneth argues that all of these factors mitigate against an award of alimony in this case. We disagree.

The primary purpose of alimony is to assist an ex-spouse for a period of time necessary for that individual to secure his or her own means of support. *Bergmeier v. Bergmeier*, 296 Neb. 440 894 N.W.2d 266 (2017). In awarding alimony, the ultimate criterion is one of reasonableness. *Id*. Although both parties were in good health at the time of their divorce, Myrna was then 64 years old, 15 years older than Kenneth. Myrna's age impacts her ability to secure means of support. Kenneth conceded that Myrna agreed to move with him to multiple states during the course of his military career in order to accommodate him. Continuity in Kenneth's noble career allowed him to reach the rank of Commander in the U.S. Navy, while Myrna obtained low-paying jobs from different employers in multiple jurisdictions. At the time of trial, Kenneth was making nearly $11,668 per month including allowances while Myrna was making $10 per hour.

Contrary to Kenneth's argument that Myrna made no contribution to the marriage, Myrna made a significant contribution to the marriage by moving numerous times to different states preventing her from earning time-related pay increases in any one job or graduating from a lower paying job to a better paying job in favor of Kenneth's career. Now that Myrna is 64, Kenneth suggests that Myrna is equally suited to pursue her career opportunities and should not receive alimony in connection with that pursuit. Contrary to that assertion, the Nebraska Supreme Court has recognized the importance of alimony in like circumstances. See, e.g., *Bergmeier v. Bergmeier, supra* (Nebraska Supreme Court upheld alimony award of $2,000 per month for 7 years where wife was 57 years old, had limited earning power, and wife would be eligible for Social Security when alimony award ended); *Hosack v. Hosack*, 267 Neb. 934, 678 N.W.2d 746 (2004) (Nebraska Supreme Court upheld alimony award of $575 to wife until she turned 62 where wife was in her mid-50's and had worked minimum wage jobs during the parties' 31-year marriage and where the district court found that the wife was unlikely to earn more than minimum wage after the dissolution and there was a significant disparity in the parties' earning capacity).

Regarding Kenneth's claim that his debt service exceeds that of Myrna, we find that argument to be disingenuous. While it is true that the court awarded only $5,500 in debt to Myrna and $348,680.90 in debt to Kenneth, the court correspondingly awarded only $20,300 in assets to Myrna with $362,171.83 in assets to Kenneth. Further, the assets awarded to Kenneth included the 160-acre and 40-acre Hayes County properties that are enrolled in the U.S. Department of Agriculture Conservation Reserve Program. These are income-producing properties which supplement Kenneth's income, while Myrna was not awarded any income-producing assets.

At the time of trial, Myrna was 64 years old and limited in the ability to provide for herself. She leaves the marriage with only $20,300 in non-income-producing assets and $5,500 in debt. This limitation is due, in part, to her willingness to move from state to state in order to accommodate Kenneth's career. The evidence showed that Myrna's expense obligations exceed her current income position, and Myrna was in need of support relative to Kenneth's financial position which is vastly superior to hers due, in some part, to his career continuity. The purpose of alimony is not to punish one party or reward another. Cf. *Smith v. Smith*, 20 Neb. App. 192, 196, 823 N.W.2d 198, 201 (2012) ("[a]limony should not be used to equalize the incomes of the parties or to punish one of the parties"). It simply represents a means of support by formerly married parties, one to the other, when the relative economic circumstances dictate the need for that support. See § 42-365. Those economic circumstances and that need are present here. The court's award of alimony by Kenneth to Myrna for a period of 96 months coincides with the time Kenneth testified he would continue to work until retirement. At the point of Kenneth's retirement, the court awarded a share of Kenneth's pension to Myrna in accordance with a division of the parties' marital estate.

Based upon our de novo review of the factors set forth in § 42-365, the alimony award was not untenable and the district court did not abuse its discretion in awarding Myrna $1,500 in alimony for 96 months.

## CONCLUSION

Upon our de novo review of the record, we find that the district court did not abuse its discretion in awarding alimony to Myrna despite her failure to specifically plead or pray for such relief in her complaint nor did the court abuse its discretion in the amount or duration of the alimony awarded. Therefore, the dissolution decree entered by the Hayes County District Court is affirmed.

AFFIRMED.