Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/25/2018 08:10 AM CDT

- 354 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

J. Mark Dunbar, appellant, v. Twin Towers
Condominium Association, Inc., a Nebraska
nonprofit corporation, et al., appellees

___ N.W.2d ___

Filed September 25, 2018.    No. A-17-682.

1. **Appeal and Error.** To be considered by an appellate court, an alleged
   error must be both specifically assigned and specifically argued in the
   brief of the party asserting the error.
2. **Rules of the Supreme Court: Appeal and Error.** Neb. Ct. R. App. P.
   § 2-109(D)(4) (rev. 2014) requires that a cross-appeal be prepared in
   the same manner and under the same rules as the brief of the appellant.
   Thus, the cross-appeal section must set forth a separate title page, a table
   of contents, a statement of the case, assigned errors, propositions of law,
   and a statement of facts.
3. ____: ____. In order for affirmative relief to be obtained, a cross-appeal
   must be properly designated in accordance with Neb. Ct. R. App. P.
   § 2-109(D)(4) (rev. 2014).
4. **Statutes: Appeal and Error.** The meaning of a statute is a question of
   law, and a reviewing court is obligated to reach conclusions independent
   of the determination made below.
5. **Summary Judgment: Jurisdiction: Appeal and Error.** When review-
   ing cross-motions for summary judgment, an appellate court acquires
   jurisdiction over both motions and may determine the controversy that
   is the subject of those motions; an appellate court may also specify the
   issues as to which questions of fact remain and direct further proceed-
   ings as the court deems necessary.
6. **Statutes.** To the extent that there is conflict between two statutes on the
   same subject, the specific statute controls over the general statute.
7. **Statutes: Appeal and Error.** Statutory language is to be given its plain
   and ordinary meaning, and an appellate court will not resort to inter-
   pretation to ascertain the meaning of statutory words which are plain,
   direct, and unambiguous.

- 355 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

8. **Statutes.** It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute.

9. **Actions: Moot Question.** An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action.

10. **Moot Question: Words and Phrases.** A moot case is one which seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive.

11. **Moot Question.** Mootness refers to events occurring after the filing of a suit which eradicate the requisite personal interest in the resolution of the dispute that existed at the beginning of the litigation.

12. **Moot Question: Jurisdiction: Appeal and Error.** Although mootness does not prevent appellate jurisdiction, it is a justiciability doctrine that can prevent courts from exercising jurisdiction.

13. **Declaratory Judgments: Moot Question.** A declaratory judgment action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action.

14. **Summary Judgment.** Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine dispute as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

Appeal from the District Court for Douglas County: Shelly R. Stratman, Judge. Affirmed in part, and in part reversed and remanded with directions.

J. Mark Dunbar, pro se.

Dennis P. Lee, of Lee Law Office, for appellee Twin Towers Condominium Association, Inc.

Pirtle, Riedmann, and Bishop, Judges.

Bishop, Judge.

## I. INTRODUCTION

J. Mark Dunbar, a condominium unit owner, brought an action against Twin Towers Condominium Association, Inc. (Association); LRC Management II LLC; and anonymous

- 356 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

defendants "Does 1-10." Dunbar was seeking relief related to actions taken by the Association. The issues on appeal involve only Dunbar and the Association. Summary judgment motions and orders filed prior to trial disposed of some of Dunbar's claims, but not all of them. Dunbar appeals and the Association attempts to cross-appeal from the order entered by the Douglas County District Court following trial. Dunbar challenges the district court's conclusion that a pet policy amendment to the Association's master deed was valid. Dunbar also challenges the district court's conclusion that the Association's adopted resolution regarding an owner's access to records and its procedures for making records available were consistent with nonprofit corporation laws and condominium laws. The Association's attempted cross-appeal is related to attorney fees. We affirm in part and in part reverse the district court's decision and remand the cause with directions.

## II. BACKGROUND

The "Twin Towers Condominium" was established by a master deed recorded on December 30, 1983, and consists of residential units, commercial units, and parking areas. The master deed provides that the Association, a Nebraska nonprofit corporation, was incorporated "to provide a vehicle for the management of the condominium" and that each "co-owner" of a condominium unit is automatically deemed a member of the Association. Dunbar purchased a residential unit in 2003 and is therefore a member. According to the Association's bylaws, a board of not fewer than three nor more than five administrators or directors (elected by the members annually) manages the affairs of the Association.

Since February 2010, Blackthorne Real Estate Property Development Company, Inc. (Blackthorne), has provided property management for the Association and is the Association's registered agent. David Davis, Blackthorne's president, testified that Blackthorne, as property manager for the Association, "handle[s] the day-to-day operations of the property," including

- 357 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

maintenance, collection of dues and special assessments, payment of vendor bills, negotiation of contracts with vendors, and "the day-to-day contact with unit owners and the Board." Blackthorne is the custodian of the Association's documents, and it prepares a budget and provides reports to the Association regarding the Association's financial affairs. Davis also attends board meetings, and his company, Blackthorne, staffs an office located in the Twin Towers Condominium. There is a computer in that office made available to owners, where they can view financial documents, the master deed, some correspondence, and minutes from meetings.

Dunbar, formerly a licensed architect in Texas and currently an attorney still active with the California bar, testified at trial that if the Association "should mismanage its expenses or should overpay vendors, it is owners like [him] who are forced to pay." Or if the Association decides to invest "hundreds of thousands or millions of dollars on capital improvements, the Association is able to assess [Dunbar] and force [him] on a personal basis to pay those expenses." Therefore, the right to examine documents is the only way Dunbar can determine why he is incurring "monthly dues assessments." He claims to have suffered damages as a result of the Association's mismanagement of its income, repairs, and capital improvements. As examples, he described his share of assessments he had to pay in 2011 ($3,000 for a parking garage renovation), 2013 ($1,200 for "chiller repair"), and 2014 ($5,000 for elevator and roof repairs). These assessments are in addition to "ordinary monthly or annual expenses" paid by owners for services such as property management, are in addition to utilities, and are "extraordinary, largely unexpected, unanticipated burdens on property owners such as [Dunbar]." Dunbar initially opened up a dialogue with his "fellow unit owners" through "telephone conversations, meetings and . . . a website [he] created" to assemble documents for the owners to "figure out what was happening to [the owners'] property investment." He then "took the formal steps necessary to force an

- 358 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

examination of the Association's records in order that [he] might be more fully informed about the nature of the income and expenses that the Association was handling for [him] and [his] fellow owners."

Dunbar requested and received documents in March 2014. According to an Association officer, "23 sets of various documents" were sent to Dunbar at that time. Dunbar proceeded to publish those documents on his personal website; the officer claimed some of the documents included vendor contracts which contained confidential information. A year later, on March 10, 2015, Dunbar sent a letter to the Association again requesting financial records. On April 14, the Association's board passed a "Resolution on Documents Provided on Request of an Owner" (resolution). According to Davis, the resolution was drawn up because Dunbar previously posted documents on his website. The resolution stated the board "desires to adopt a uniform policy and procedure to respond to such owner requests for Association records and documents." The resolution also stated, in part:

> 3: In responding to a request of an Owner for any financial records or financial information the [Association] other than the annual budget [sic], pursuant to Neb. Rev. Stat. section 21-19,166 (c), may make a policy decision on providing such documents to the requesting owner if:
> A: The [Association] determines that the owner's demand is made in good faith and for a proper purpose;
> B: In the written request the owner describes with reasonable particularity the purpose and the copies of the records the member desires; and
> [C]: The records are directly connected with such purpose as described by the owner.
> 4: Any request made by an owner for documents shall be referred to the . . . Board . . . for review and action. The Board may consider such request at its next . . . meeting. In the event the Board determines to produce any or all of the documents requested by the owner such

- 359 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

documents shall be provided to the owner within five (5) days of the decision of the Board related to such document request and the Board's determination required by Neb. Rev. Stat[.] section 21-19,166 (c).

Also, after the adoption of the resolution, the board decided to create a website for the owners, which is managed by Blackthorne. Davis indicated that the board directed him to place on that website all financial documents, board meeting minutes, and other pertinent documents, such as the master deed, bylaws, and amendments. Email communications and announcements for elections and social events are posted on the website as well. Any document marked with "PDF" is a protected file that can be opened by an owner registered on the board's Twin Towers Condominium website, but the protected files cannot be copied. The financial records are all marked as protected files.

The Association sent a letter to Dunbar on April 20, 2015, which, in relevant part, purported it would provide him with copies of the documents he requested. Davis sent Dunbar six emails attaching various documents on April 25, but according to Dunbar, not a single document was responsive to Dunbar's requests. On November 16, Dunbar sent another letter again requesting various financial records. The Association sent a letter on November 20 informing Dunbar that the board voted to deny his request for documents. It explained that his request was denied because Dunbar received documents in March 2014 and posted documents on his personal Twin Towers Condominium website. The Association stated that this violated confidentiality provisions on some of the documents and exposed the Association "to potential claims of financial liability for disclosure of confidential proprietary information and breach of fiduciary duty." The letter also stated:

[B]ased on Neb. Rev. Stat. section 21-19,166(c)(1) and 21-19,166(c)(3) the Board hereby denies your document request and finds that

- 360 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

(1) your demand is <u>not</u> "made in good faith and for a proper purpose", and

(2) . . . the records you have requested are <u>not</u> "directly connected with this purpose."

(Emphasis in original.)

On March 1, 2016, Dunbar filed a lawsuit related to a number of actions taken by the Association. Both Dunbar and the Association filed motions for summary judgment; each obtained some relief, but several claims remained undecided. The Association subsequently filed another summary judgment motion, and Dunbar filed a motion for reconsideration. Following another hearing, the Association was successful in getting one more claim resolved in its favor, but three claims still remained. Trial on the remaining claims took place on May 15, 2017. At the onset of trial, the parties reached an agreement and stipulated to an issue regarding the basic values for the condominium units. This left for trial only the claims related to Dunbar's request for access to and the right to copy Association records, and the Association's resolution regarding access to records. On June 2, the district court entered an order dismissing Dunbar's remaining claims. Dunbar appeals, and the Association attempts to cross-appeal.

### III. ASSIGNMENTS OF ERROR

Dunbar assigns, consolidated and restated, that the district court erred by (1) failing to find that the Association's resolution limiting document inspection by unit owners was in conflict with Neb. Rev. Stat. § 76-876 (Reissue 2009) and thereby erroneously denying Dunbar's request to examine "'all'" records, (2) holding that the statutory right to examine records under § 76-876 does not include the right to copy those records, and (3) failing to find that the purported amendment to the master deed regarding pets was invalid.

[1] Although Dunbar assigns error and sets forth facts related to the parties' stipulation regarding basic values for

- 361 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

the condominium units, he does not specifically argue this error. Accordingly, we will not address it. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018).

[2,3] In its attempted cross-appeal, the Association appears to be claiming the district court erred by failing to award it attorney fees pursuant to Neb. Rev. Stat. § 25-824 (Reissue 2016), which permits such fees when a court determines an action was frivolous. However, the Association's brief does not comply with Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014), which requires that a cross-appeal be prepared "in the same manner and under the same rules as the brief of appellant." "Thus, the cross-appeal section must set forth a separate title page, a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of facts." *Friedman v. Friedman*, 290 Neb. 973, 984, 863 N.W.2d 153, 162 (2015). In order for affirmative relief to be obtained, a cross-appeal must be properly designated in accordance with § 2-109(D)(4). See *Bacon v. DBI/SALA*, 284 Neb. 579, 822 N.W.2d 14 (2012). We therefore do not address the Association's attempted cross-appeal.

## IV. STANDARD OF REVIEW

[4] The meaning of a statute is a question of law, and a reviewing court is obligated to reach conclusions independent of the determination made below. *In re Application of City of Neligh*, 299 Neb. 517, 909 N.W.2d 73 (2018).

[5] When reviewing cross-motions for summary judgment, an appellate court acquires jurisdiction over both motions and may determine the controversy that is the subject of those motions; an appellate court may also specify the issues as to which questions of fact remain and direct further proceedings as the court deems necessary. *Johnson v. Nelson*, 290 Neb. 703, 861 N.W.2d 705 (2015).

- 362 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

## V. ANALYSIS

### 1. Association's Resolution Limiting Access to Documents

The Association's resolution at issue incorporates some language from condominium statutes and nonprofit corporation statutes; the resolution limited an owner's access to certain Association records and, other than the annual budget, made discretionary to the board the decision to produce financial records and certain written communications. Dunbar claims the district court erred by failing to find that the resolution conflicts with § 76-876, which is a statute specific to condominiums and an owner's access to records. He asserts that the nonprofit corporation statutes are of "general application" in this case, that the statutes controlling condominiums are "more specific," and that therefore, to the extent they are in conflict, the "qualified right" provided by the nonprofit laws must yield to the "unqualified right" of the condominium laws to inspect all records of the Association. Brief for appellant at 23 (emphasis in original). On the other hand, the Association argues that the adoption of the resolution was lawful and is consistent with the condominium laws and the nonprofit corporation laws.

Accordingly, we next examine the relevant statutes for condominiums and nonprofit corporations as pertinent to Dunbar's request for access to and copies of Association records.

### (a) Statutory Background Specific to Condominiums

Nebraska has two condominium acts: the Condominium Property Act (CPA), Neb. Rev. Stat. §§ 76-801 to 76-823 (Reissue 2009), and the Nebraska Condominium Act (NCA), Neb. Rev. Stat. §§ 76-825 to 76-894 (Reissue 2009 & Cum. Supp. 2016). See *Twin Towers Condo. Assn. v. Bel Fury Invest. Group*, 290 Neb. 329, 860 N.W.2d 147 (2015). Generally, the CPA governs condominium regimes created under a "master deed" before 1984, and the NCA governs those created

- 363 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

under a "declaration" on or after January 1, 1984. See *Twin Towers Condo. Assn. v. Bel Fury Invest. Group*, 290 Neb. at 336, 860 N.W.2d at 155. As noted earlier, the Twin Towers Condominium was established by a master deed recorded on December 30, 1983; therefore, the CPA is applicable and, as will be discussed, certain statutes under the NCA are also applicable.

Both sets of condominium laws provide for the examination of records. Section 76-816 under the CPA (pre-1984) states, in relevant part:

The board of administrators . . . shall keep or cause to be kept a book with a detailed account, in chronological order, of the receipts and expenditures affecting the condominium property regime and its administration and specifying the maintenance and repair expenses of the common elements and all other expenses incurred. Both the book and the vouchers accrediting the entries made thereupon shall be available for examination by any co-owner or any prospective purchaser at convenient hours on working days that shall be set and announced for general knowledge. . . . For condominiums created in this state before January 1, 1984, the provision on the records of the administrative body or association in section 76-876 shall apply to the extent necessary in construing the provisions of [§] 76-876 . . . which apply to events and circumstances which occur after January 1, 1984.

Section 76-876 of the NCA (effective 1984) states: "The association shall keep financial records sufficiently detailed to enable the association to comply with section 76-884. All financial and other records of the association shall be made reasonably available for examination by any unit owner and his or her authorized agents."

Section 76-884, which pertains to the resale of a condominium unit, states in relevant part:

(a) Except in the case of a sale where delivery of a public-offering statement is required . . . the unit owner

- 364 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

and any other person in the business of selling real estate who offers a unit to a purchaser shall furnish to a purchaser before conveyance a copy of the declaration other than the plats and plans, the bylaws, the rules or regulations of the association, and the following information:

(1) a statement setting forth the amount of the monthly common expense assessment and any unpaid common expense or special assessment currently due and payable from the selling unit owner;

(2) any other fees payable by unit owners;

(3) the most recent regularly prepared balance sheet and income and expense statement, if any, of the association;

(4) the current operating budget of the association, if any;

(5) a statement that a copy of any insurance policy provided for the benefit of unit owners is available . . . upon request; and

(6) a statement of the remaining term of any leasehold estate affecting the condominium . . . .

(b) The association, within ten days after a request by a unit owner, shall furnish in writing the information necessary to enable the unit owner to comply with this section.

Importantly, § 76-826(a) of the NCA states that certain sections of the NCA shall apply, to the extent necessary to construe that section, to all condominiums created before January 1, 1984, "but those sections apply only with respect to events and circumstances occurring after January 1, 1984, and do not invalidate existing provisions of the master deed, bylaws, or plans of those condominiums." Section 76-826(a) identifies §§ 76-876 and 76-884 as being applicable to all condominiums created before 1984 for events and circumstances occurring after January 1, 1984.

Therefore, we will consider both §§ 76-876 and 76-884 in determining Dunbar's rights to access and copy Association records. Neither Dunbar nor the Association contends that the

- 365 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

master deed or bylaws contain any language which should govern the outcome of the records issue raised, so our review focuses on the language of the statutes. We have provided the relevant condominium statutes above; however, since the Association has also relied on Nebraska's nonprofit corporation laws to support its position, we set forth those relevant statutory provisions next.

### (b) Nonprofit Corporation Statutes
### Related to Records

The Association claims that because it is incorporated under the Nebraska Nonprofit Corporation Act, see Neb. Rev. Stat. § 21-1901 et seq. (Reissue 2012 & Supp. 2017), the records issue is governed by both Nebraska's nonprofit corporation statutes and the condominium statutes. As relevant here, the nonprofit corporation statutes require such corporations to maintain certain corporate records as set forth in § 21-19,165(a) through (e). Interestingly, § 21-19,165(a) requires a corporation to keep permanent records of minutes of all meetings of its members and board of directors, of all actions taken by members or directors without a meeting, and of all actions taken by committees of the board. Despite that requirement, we note that the Association's resolution indicates that it will provide minutes of any meeting "if maintained." However, maintaining permanent records of minutes of all meetings is not discretionary under the nonprofit statutes.

Section 21-19,165(b) requires the corporation to maintain appropriate accounting records. Section 21-19,165(e) requires the corporation to keep a copy of the following records at its principal office: articles of incorporation and all amendments currently in effect; bylaws and all amendments currently in effect; resolutions adopted by the board of directors related to characteristics, qualifications, rights, limitations, and obligations of members; minutes of all meetings of members; records of all actions approved by the members for the past 3 years; all written communications to members generally within the

- 366 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

past 3 years, including financial statements furnished under § 21-19,170; a list of names and addresses of current directors and officers; and its most recent biennial report delivered to the Secretary of State.

With regard to access to and copying of corporation records, we note the following statutory requirements: Other than an exception provided for a religious corporation, and subject to the requesting member being charged for costs, § 21-19,166(a) provides, in relevant part, that upon 5 days' written notice or written demand, "a member is entitled to inspect and copy, at a reasonable time and location specified by the corporation, any of the records of the corporation described" in § 21-19,165(e) (which we have identified in the preceding paragraph). Notably, that also includes all financial statements described in § 21-19,170, which provides for a corporation to furnish a member with its latest financial statements, including a balance sheet as of the end of the fiscal year and a statement of operation for that year. The documents referred to under § 21-19,166(a) are not subject to the requirements set forth under § 21-19,166(c), as discussed next.

Section 21-19,166(b) permits a member to inspect and copy additional records if the member meets the requirements of § 21-19,166(c). Again, other than an exception provided for a religious corporation, and subject to the requesting member being charged for costs, upon 5 days' written notice to the corporation, § 21-19,166(b) provides for the inspection and copying of the following: "(1) Excerpts from any records required to be maintained under subsection (a) of section 21-19,165, to the extent not subject to inspection under subsection (a) of this section; (2) Accounting records of the corporation; and (3) Subject to section 21-19,169, the membership list." The records described above in § 21-19,166(b) are in addition to those referred to in § 21-19,166(a) (which refers to the records identified in § 21-19,165(e)). Therefore, it is only the additional records under § 21-19,166(b) which are subject to the requirements set forth in § 21-19,166(c). Section 21-19,166(c)

- 367 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

states that a member may inspect and copy the records identified in subsection (b) only if "(1) [t]he member's demand is made in good faith and for a proper purpose; (2) [t]he member describes with reasonable particularity the purpose and the records the member desires to inspect; and (3) [t]he records are directly connected with this purpose." The resolution passed by the board in the present case made the requirements described in § 21-19,166(c) applicable to "any financial records or financial information" requested by an owner, except for "the annual budget." This is not consistent with § 21-19,166(a), which permits a member to inspect and copy, without conditions, those records described in § 21-19,165(e), which include financial statements that include a balance sheet as of the end of the fiscal year and a statement of operations for that year. See §§ 21-19,165(e)(5) and 21-19,170(a). Accordingly, the board's resolution incorporating the language of § 21-19,166(c) and making it applicable to all financial records requested (other than the annual budget) is not consistent with the nonprofit corporation statutes.

### (c) District Court's Decisions

In addition to the nonprofit corporation statutes, the Association relied upon § 76-884 (information required for resale of a condominium unit) to support its position that the resolution was appropriate and that Dunbar had been provided all documents required under the law. Dunbar argued that the documents listed in § 76-884 were a minimum records requirement for the association and that § 76-876 required all financial and other records of the association to be made reasonably available for examination by any unit owner. In a summary judgment order entered August 31, 2016, the district court concluded that § 76-884 was not the controlling statute, stating:

> The two statu[t]es are plainly distinctive. As stated above, § 76-884 places a duty on the condominium owner to furnish the pr[e]scribed records to a prospective

- 368 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

buyer. Neb. Rev. Stat. § 76-876 is more expansive and
places a duty on the condominium association to main-
tain records and make them reasonably available to con-
dominium owners.

The court then set forth the entirety of § 76-876 and pointed
out that the statute is "two sentences long." The court noted
that the first sentence required the Association to keep records
sufficiently detailed to enable the Association to comply with
§ 76-884 and that "[i]f the records specifically enumerated
in § 76-884 were the only records that § 76-876 required the
[A]ssociation to make available to owners, then the statu[t]e
would end after the first sentence." The court emphasized the
language in the second sentence of § 76-876, which says, "All
financial and other records of the association shall be made
reasonably available for examination by any unit owner . . . ."
We agree with the district court that § 76-884 does not govern
which records a condominium owner has the right to access
and that the second sentence contained in § 76-876 provides
the controlling language.

The district court went on to find that there were genuine
issues of material fact regarding the Association's compliance
with the condominium laws and therefore denied summary
judgment on the issues related to the resolution and access to
records. Following trial, however, the court dismissed Dunbar's
remaining claims. In its order entered June 2, 2017, the court
stated, in relevant part:

In applying the law associated with both non-profit
organizations as well as condominiums, the Court finds
the [Association] has complied with the law in provid-
ing owners with financial and other information pursu-
ant to Neb. Rev. Stat. §76-876. The Association has
established a process to provide owners financial and
other records of the [A]ssociation and has this informa-
tion reasonably available for examination by any unit
owner and his or her authorized agents. In addition, the
Court finds the methods of providing information to the

- 369 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

owners by the [Association] comply with Nebraska law. The resolution adopted by the [Association] does not conflict with the law and is consistent with the Nebraska Non-Profit Corporation Act. In addition, the resolution does not conflict with the [NCA]. The documents and method of making the financial and other records available comply with the requirement that this information is made reasonably available to owners and their agents. Further, the resolution found in Exhibit 115 does not prohibit owners from the ability to examine financial and other records of the [Association]. The method [the Association] provide[s] to owners for examination of records is reasonable. The Court does not find there to be a statutory requirement for [the Association] to allow copies to be made. [The Association has] both a website and an on-site computer where owners can review financial and other documents at their leisure.

The relief sought by Dunbar was denied, and the case was dismissed.

### (d) Reconciling Condominium Statutes With Nonprofit Statutes

The district court concluded the Association's resolution limiting access to records was in compliance with the nonprofit laws and the condominium laws. However, as already noted, the Association's reliance on § 21-19,166(c) to limit an owner's access to all financial records (other than annual budget) is not consistent with the nonprofit corporation statutes discussed above. Further, the resolution is not consistent with the applicable provision of the condominium laws, specifically § 76-876. The plain language of § 76-876 gives a condominium owner the right to examine "[a]ll financial and other records of the association . . . ." Therefore, even if the resolution had been written in a manner consistent with the nonprofit corporation statutes, it would have nevertheless conflicted with the rights conferred upon owners under the condominium laws

- 370 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

written specifically for their common ownership interests in the condominium regime.

[6] To the extent that there is conflict between two statutes on the same subject, the specific statute controls over the general statute. *Cox Nebraska Telecom v. Qwest Corp.*, 268 Neb. 676, 687 N.W.2d 188 (2004) (specific statutes governing telecommunications appeals control over general provisions governing appeals from Public Service Commission).

The Nebraska Nonprofit Corporation Act applies broadly to all nonprofit corporations and therefore is of general application in this case, whereas the NCA applies only to condominium regimes and condominium owners and therefore has specific application to the issues before us. To construe any language of the nonprofit corporation statutes to control the language of § 76-876 would have the effect of nullifying or making meaningless the words "[a]ll financial and other records," as set forth in the condominium statute. We therefore conclude § 76-876 controls a condominium owner's right to examine all financial and other records of its association.

The Association points us to the considerable records it does publish, including but not limited to "the Master Deed . . . , election results . . . , the financial records from 2015 . . . , the certificate of insurance . . . , the complete financial records of the [Association], the operating budget . . . , budget comparative balance and balance sheet . . . , income statement . . . , and the [Association] check register . . . ." Brief for appellee at 37. Those records are available on a website operated by the Association and available to owners without internet access in "the [Association] building office." *Id.* The Association argues that the "records resolution is a lawful and proper exercise of its fiduciary duty to its owners and members" and that it is a "proper balance between owners and members that seek records of the [Association] and the limited owners/members of the [Association], like [Dunbar], who abuse the rights to [Association] records by making demands that the [Association] Board reasonably

- 371 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

determines to not be in good faith and not for a proper purpose." *Id.* at 36.

However, that balance is not the Association's to strike; the decision regarding a condominium owner's access to records was decided by the legislative branch when enacting the CPA and NCA. Further, as Dunbar aptly points out, "[t]he right of condominium owners to examine records does not turn on whether the [A]ssociation happens to be organized as a corporation or not." Brief for appellant at 24. As Dunbar argues, "'all' means all," reply brief for appellant at 7, and condominium owners are entitled to examine whatever financial or other records exist, per the plain language of the NCA.

We therefore reverse the district court's order determining that the resolution did not conflict with Dunbar's rights under § 76-876. We also reverse the district court's finding that the resolution was in compliance with the nonprofit corporation statutes. We remand the cause to the district court with directions to issue an order finding that the Association's resolution was neither in compliance with the NCA, specifically § 76-876, nor in compliance with the nonprofit statutes as discussed above, and further finding that Dunbar is entitled to "[a]ll financial and other records of the association" under § 76-876, which records shall be made reasonably available for examination. We next discuss Dunbar's argument that making the records reasonably available includes allowing him to make copies.

2. Right to Copy Records

The district court's June 2, 2017, order states, "The Association has established a process to provide owners financial and other records of the [A]ssociation and has this information reasonably available for examination by any unit owner and his or her authorized agents." The court further found that there was no "statutory requirement for [the Association] to allow copies to be made. [The Association has] both a website and an on-site computer where owners can review financial

- 372 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

and other documents at their leisure." We agree with the court's determination on this issue, so long as the records being made available to the owners include, under § 76-876, "[a]ll financial and other records of the association."

Dunbar argues that § 76-876 carries with it "the right to 'copy' such records." Brief for appellant at 25. Dunbar points us to case law from several other jurisdictions interpreting various statutory rights to inspect or examine records which he claims supports his argument that the right to examine documents includes the right to copy them. He also points to Neb. Rev. Stat. § 84-712 (Reissue 2014), but that statute pertains to public records and is not applicable here.

[7,8] However, we need not consider how other states may handle the copying of records for condominium owners when the plain language of § 76-876 requires only that such records be made "reasonably available for examination by any unit owner and his or her authorized agents." Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018). It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute. *Id.*

We decline to read into the language of § 76-876 a right to make copies of the records. The Legislature did not include any such language regarding copies in the statute, which it could have done, like it has with other statutory schemes. For example, § 21-19,166(a) of the nonprofit corporation laws, set forth earlier, provides that "a member is entitled to inspect and copy" certain corporation records. Even the Association acknowledged, in its closing argument at trial, the existence of rights to inspect and copy certain records under the nonprofit corporation statutes. However, we need not address whether some of the records sought by Dunbar should be available for copying under the nonprofit corporation statutes, as Dunbar's

- 373 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

argument at trial and on appeal was only that his right to access all records included the right to copy all records under § 76-876. We agree with the district court that § 76-876 does not confer on condominium owners the right to make copies of all records; rather, it gives them the right to examine all of them.

### 3. Amendment to Master Deed Regarding Pets

The Association filed an amendment (regarding pets) to the master deed with the Douglas County register of deeds on August 3, 2011. Dunbar sought a declaration that the amendment was void or invalid and that it should be voided or "stricken by the Recorder of Deeds." Dunbar's requested relief was denied by the district court.

The master deed, at paragraph 7(i), states, "Household pets will be subject to regulation, restriction, exclusion and special assessment, as may be determined by the Association from time to time." The 2011 amendment, which was signed by the Association president on August 24, 2010, attaches a 2-page "Exhibit A" titled "Twin Towers Condominium Association Pet Addendum." The addendum limits the number of cats and dogs per unit, with dogs limited to a weight of "25 pounds or less per dog." Certain breeds of dogs are "never acceptable," and "[e]xotic pets" are not allowed. There are a number of rules regarding expectations of pet and owner behaviors set forth in the addendum, including that pets violating the policy may be required to be permanently removed from the property and owners may be subject to fines. The addendum also provides that the board or property manager "shall from time to time have the right to make reasonable changes and additions to the pet policies, if said changes are in writing and distributed to all owners/renters who are permitted to have pets."

Dunbar argues that the amendment to the master deed established "as a matter of deeded property rights" which pet breeds

- 374 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

and sizes were permitted and which were not. Brief for appellant at 29. Dunbar asserts that the amendment

> fundamentally changed the pet policy from one that was subject to the ongoing discretion of the revolving membership of the . . . board . . . to make and amend rules regarding the pet policy into one constituting a relatively permanent set of conditions that could only be altered by a subsequent master deed amendment.

*Id*. at 29-30. Dunbar's concern was that the amendment removed from the board the authority to regulate pets and, thus, altered the rights of every unit owner by "transforming the Association's rulemaking discretion . . . into a relatively permanent statement of policy with regard to pets." *Id*. at 30. Dunbar claims that he "has a legally cognizable interest" in not permitting "his rights under the master deed to be altered without the consent of the necessary two-thirds majority of ownership." *Id*. The question is, therefore, whether a two-thirds majority of the ownership approved and properly recorded the amendment. The Association asserts such a majority did; Dunbar disagrees.

Both parties filed motions for summary judgment on this issue, and the court ruled in favor of the Association. The court's August 2, 2016, "Order on Cross Motions for Summary Judgment" referenced the Association's affidavit, in which the person who was treasurer at the time of the amendment stated that an election was held in August 2010 to approve the amendment. The treasurer stated that although the ballots were no longer available, the election resulted in more than two-thirds of the owners voting in support of the amendment. Dunbar's affidavit asserted that based on his personal knowledge and his review of the board minutes, there was no election held in August 2010. The district court found that Dunbar failed to explain the extent of his personal knowledge, other than his reading of the minutes, and therefore concluded Dunbar failed to meet his burden of proof. The district court's order also stated, "It should also be noted [Dunbar] stated he

- 375 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

did not intend to overturn the decision of the Association to allow owners to have pets. He simply wanted a declaration that the Association did not follow proper procedure for the amendment." The court addressed this issue further in its subsequent order entered August 31 denying Dunbar's motion to reconsider this issue. The court stated that "the allegations . . . regarding the pet amendment are non-judiciable [sic], either as moot or as an advisory opinion because [Dunbar] is not seeking removal of pets from the condominium."

[9-13] We first address the district court's finding that this issue was nonjusticiable either as moot or as calling for an advisory opinion. As stated in *Nesbitt v. Frakes*, 300 Neb. 1, 5, 911 N.W.2d 598, 603 (2018):

An action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action. A moot case is one which seeks to determine a question that no longer rests upon existing facts or rights—i.e., a case in which the issues presented are no longer alive. Mootness refers to events occurring after the filing of a suit which eradicate the requisite personal interest in the resolution of the dispute that existed at the beginning of the litigation. Although mootness does not prevent appellate jurisdiction, it is a justiciability doctrine that can prevent courts from exercising jurisdiction.

Further, a "declaratory judgment action becomes moot when the issues initially presented in the proceedings no longer exist or the parties lack a legally cognizable interest in the outcome of the action." *Id*. at 7, 911 N.W.2d at 604.

The amendment to the master deed altered Dunbar's property rights as a co-owner. The fact that he is not "seeking removal of pets from the condominium" does not resolve the issue of whether an invalid amendment to the master deed was recorded. As a co-owner and member of the Association, Dunbar continues to have a legally cognizable interest in the validity of any amendment to the master deed. Therefore, the

- 376 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

court erred in finding the issue was moot or called for an advisory opinion.

[14] We turn now to the court's finding that Dunbar failed to meet his burden of proof to overcome summary judgment against him. Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine dispute as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. See *Wynne v. Menard, Inc.*, 299 Neb. 710, 910 N.W.2d 96 (2018). See, also, Neb. Rev. Stat. § 25-1332 (Supp. 2017).

As noted above, the Association produced an affidavit from the person serving as treasurer at the time of the amendment which stated that more than two-thirds of the condominium owners voted in support of the amendment in August 2010.

Dunbar's affidavit stated that there was no election "or other approval by owners . . . that occurred on or before August 24, 2010, as claimed in the purported amendment recorded August 10, 2011." The minutes of the board meetings immediately preceding the signing of the amendment by the Association president on August 24, 2010, were received as evidence. The April, May, and June 2010 minutes all contain a reference to a "[p]et policy" or pet-policy-related "update." Notably, the May 19 minutes, at paragraph 10, states: "Pet policy update. Owners representing more than 50% of square footage have agreed to allow pets. 'No' votes represent about 5% of the building's square footage. There are still owners who haven't been contacted." The June 28 minutes indicate that a letter will be sent to "all remaining owners next week" and state, "After the deadline, we will put out notice of the results." The July 21 minutes are silent as to any further activity related to the pet policy. And then significantly, the September 2 minutes show that the board approved the July minutes; nothing is indicated showing an August meeting, nor is there anything contained in the September minutes regarding the final results of the vote on the pet policy.

- 377 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

Dunbar also offered into evidence, at the hearing on the motion to reconsider, the affidavit of an owner of a unit in the condominium, who averred:

> I did not receive any information or notice, formal or otherwise, of a unit owner's election that, according to [the treasurer's] affidavit, supposedly was held in August of 2010 regarding a pet amendment to the Master Deed. As a unit owner who was attentive to the affairs of the Association, I do not believe that any such unit owner's election to amend the Master Deed was held in August of 2010 and that, if any such election had been held in August of 2010, I would have become aware of it.

We conclude the evidence was sufficient to create a genuine dispute as to material facts related to whether a proper vote was taken and recorded approving an amendment to the master deed regarding pets. Therefore, summary judgment was not appropriate on this issue. However, the disposition of this issue can be decided on other grounds, as discussed next.

Dunbar had sought summary judgment on the basis that the amendment is invalid on its face, and we agree. Regarding how to effect an amendment to the master deed, the master deed states:

> Unless a greater number is required by law, co-owners representing two-thirds or more of the total basic value of the condominium may at any time in writing duly acknowledged and recorded effect an amendment to this Master Deed or the Bylaws of said condominium which are attached hereto . . . .

As previously noted, the amendment at issue is dated and signed by the Association's president on August 24, 2010, but was not filed with the register of deeds until August 3, 2011. The amendment states, "[T]he undersigned owners of more than two-thirds (2/3) of the basic value of the Condominium desire to amend the By-Laws, Amendment to Master Deed and Rules and Regulations to allow pets as is described in Exhibit 'A' (attached)." As observed by the district court in its

- 378 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

August 2, 2016, summary judgment order, the amendment is signed by the Association president at the time and attached to the amendment is a list of every owner of an Association unit. The district court specifically found, "The individual owners did not sign the amendment." Dunbar asserts the attachment is "a printed list of every owner," instead of signatures. Brief for appellant at 14.

We agree with Dunbar that the amendment was not in compliance with the master deed's language for how to effect a proper amendment to the master deed. The amendment on its face does not demonstrate that it is a "writing duly acknowledged and recorded" by "co-owners representing two-thirds or more of the total basic value of the condominium" as the master deed specifies. The president is not authorized by the master deed to amend the master deed in lieu of the requisite co-owners; nor do the bylaws provide such authority. We also observe that there is a past amendment to the master deed included in our record which has an attachment containing the personal signatures of unit owners supporting the amendment.

As to the remedy for an invalid amendment, we are guided by *McGill v. Lion Place Condo. Assn.*, 291 Neb. 70, 864 N.W.2d 642 (2015), which concluded an improper amendment to a condominium's declaration was void. *McGill* involved a district court judgment which invalidated the sale of limited common elements of a condominium governed by the NCA. The Nebraska Supreme Court affirmed, interpreting one of the statutes under the NCA (not applicable here) to require approval by 80 percent of the votes in the association and unanimous agreement of the unit owners to effectuate the sale. Unlike the terms of the master deed at issue in the present matter, in *McGill*, under the NCA, the association president could file an amendment to the condominium's declaration related to the sale. However, the sale of the limited common elements at issue still required the votes noted above, and an agreement for such a conveyance had to be evidenced by the execution of an agreement in the same manner as a deed and

- 379 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
DUNBAR v. TWIN TOWERS CONDO. ASSN.
Cite as 26 Neb. App. 354

by the requisite number of unit owners. The Supreme Court noted that there was "no evidence of any agreement executed by the unit owners approving the sale" as required by statute. *McGill v. Lion Place Condo. Assn.*, 291 Neb. at 92, 864 N.W.2d at 658. Given the lack of compliance with the statute regarding conveyances of common elements under the NCA, the Supreme Court agreed with the district court that the conveyance was void.

We similarly find, given the lack of compliance with the plain language of the master deed in the present matter, that the amendment related to the pet policy is void. No statute under the CPA, nor any of the statutes under the NCA designated to apply to condominiums created before January 2, 1984, change the requirement for how to amend the master deed in this case. The master deed in the present matter requires a "writing duly acknowledged and recorded" by "co-owners representing two-thirds or more of the total basic value of the condominium." That requisite acknowledgment and recording by two-thirds of the co-ownership have not been shown here. Accordingly, we find the district court erred in failing to grant summary judgment in favor of Dunbar on this issue, and we reverse that decision and remand the cause to the district court to enter an order granting judgment in favor of Dunbar on this issue and declaring the amendment void.

## VI. CONCLUSION

In summary, we reverse the district court's decision on two matters: (1) its conclusion that the Association's resolution does not conflict with the applicable condominium law on a member's right to examine records, specifically § 76-876, and (2) its decision regarding the validity of the master deed amendment regarding pets. As to those two matters, we remand with directions to enter an order in accordance with this opinion. In all other respects, we affirm the district court's orders.

Affirmed in part, and in part reversed
and remanded with directions.